STATE OF MISSOURI, Respondent, v. WILSON,
Appellant.

St. Louis Court of Appeals, March 17, 1908.

CRIMES: Clerk of Circuit Court: Purchasing Fees Taxed as
    Cost. In the prosecution of the clerk of the circuit court for
    purchasing fees, taxed as costs in his court, at less than par
    value, under the provisions of section 2119, Revised Statutes of
    1899, the evidence is examined and held insufficient to sus-
    tain a verdict of guilty, that the facts in evidence are not in-
    consistent with the defendant's innocence.

Appeal from Douglas Circuit Court.—*Hon. John T.
Moore*, Judge.

REVERSED.

*A. H. Buchanan* and *A. H. Livingston* for appellant.

*Fred Stewart* for respondent.

NORTONI, J.—The defendant who had a short time before occupied the official position of circuit clerk of Douglas county, was convicted in the circuit court of offending the law by buying fees taxed as costs in the court of which he was clerk at less than their par value. He appeals to this court, insisting the evidence is insufficient to support the judgment of conviction against him. After having read every word of the testimony several times, we find the record positively barren of facts tending to support the charge contained in the information. It appears from the evidence that defendant was clerk of the circuit court of Douglas county for the term ending shortly before his conviction. That one Hilderbrand, who owned forty acres of cheap land in said county and had defaulted in the payment of taxes thereon, had been sued in the circuit court and the lien of the State enforced against such lands for taxes, and the land was advertised for sale in "The Herald," a newspaper printed and published at Ava, the county seat. This newspaper was owned, or conducted at least, by one Benjamin J. Smith and Frank Davis. The fee of Smith and Davis for the publication of the notices of the sheriff's sale was taxed at $7.50 as costs in the case and properly listed or itemized upon a special execution directing the sheriff to sell the lands to satisfy the taxes and costs. The information on which the defendant was convicted, charges him with having purchased this $7.50 printers' fee owned by Smith and Davis and taxed as costs in the Hilderbrand case in their favor, at less than "par value." The amount alleged to have been paid therefor

by defendant is $2.50.  The State placed both Mr. Smith and Mr. Davis upon the stand, each of whom testified positively that they had neither jointly nor severally sold the fee mentioned, or any other fee, to the defendant.  In answer to questions by the prosecuting attorney, they also denied having any arrangement of any kind whatever whereby they were to sell or discount the fee mentioned, or any other fee in the Hilderbrand or any other case, to the defendant.  In every respect their evidence is pointed and specific in opposition to the charge contained in the information.  The other witnesses having wholly failed to give testimony to support the charge against the defendant, the State introduced evidence tending to prove that the forty acres of land involved in the Hilderbrand tax sale were sold by the sheriff under a special execution on the tax judgment against Hilderbrand.  At this sale, Benjamin J. Smith was the highest and best bidder, his bid being $10, and the deed was made to his associate in the publication of The Herald, Mr. Frank Davis.  Mr. Smith said that he made the bid and purchased the land for the purpose of protecting the fee of $7.50 owing to him and Davis, for publishing the notice of the sheriff's sale in the case.  It was developed that although Smith bid in the land at $10 and caused the deed to be made to his associate, Davis, neither he nor Davis paid the sheriff the $10 or any other amount, for that matter.  The sheriff testified that he settled the matter with the defendant circuit clerk in a settlement of accounts between them; that is to say, that he, the sheriff, had an account with the clerk, as is usual between those officers; that he had collected and had in his possession certain fees owing to the clerk in other matters and the defendant, as clerk, had in his hands certain moneys which had been paid into the office of the clerk for the sheriff, and in this settlement, he received credit from the clerk on account of his costs in the Hilderbrand tax suit, in

which the tax deed had been made to Frank Davis at the direction of his associate, Mr. Smith. The costs accrued and due, including the costs of sale in the Hilderbrand case, were shown to amount to $42.69. As stated, there was realized from the sale of the land only $10, and this was the entire fund available to the officers and publishers of the notice for the payment of the costs amounting in all to $42.69. It was also shown that on November 5th, the defendant circuit clerk paid to the publishers of The Herald, Smith and Davis, the sum of $11.25. It is said the payment was made to cover the publication fee in the Hilderbrand case and costs for publishing notices of some kind in two other cases, not identified. We are at a loss to ascertain the amount due the publishers in these other cases. It is true, it appears clearly enough $7.50 of the amount was due Smith and Davis in the Hilderbrand case. Not a word, however, appears indicating the amount due them in the two other cases mentioned, and the mere fact that the clerk paid over $11.25 fees in the three cases without something more specific, signifies nothing whatever in the present prosecution. It appears that after receiving and recording the tax deed to the Hilderbrand land, Frank Davis conveyed the same to some one. The record wholly fails to disclose to whom it was conveyed. Davis merely stated that he no longer owned the land, having deeded it away. It is certain no fact or reasonable inferences from the facts in proof, indicates that he conveyed it to the defendant, nor does it appear from any source that the defendant was the recipient of a conveyance of this land from Davis or any one else, or that he has or had any interest whatever, either direct or indirect, in the lands mentioned. This was all of the proof. The court refused to peremptorily direct a verdict of acquittal, and erred in so doing.

The statute alleged to have been offended against is as follows:

"It shall be unlawful for the clerk of any court, or his deputy, or any person in his employ, or any person for him, or any other officer of any court, to buy or purchase, or trade for, directly or indirectly, any fee taxed or to be taxed as costs in the court of which he is clerk or officer, or of any other court in this State, or any county warrant, at less than par value, which may be by law due or become due to any person by or through any such court; and it shall be unlawful for any county clerk, circuit clerk, recorder, or any other officer of any court, or his deputy, or any person in his employ, to charge, collect or receive less fee for his services than is provided by law." [Sec. 2119, R. S. 1899, sec. 2119, Mo. Ann. St. 1906.]

The defendant is presumed to be innocent of the offense charged against him. It devolved upon the State to prove his guilt beyond a resonable doubt, and the case ought not to have been sent to the jury unless there was substantial evidence tending to remove the presumption of innocence, and indicating his guilt. Now it is very clear that in order to sustain the charge in the information under this section, it must appear that the defendant or some other person for him, either directly or indirectly bought, purchased or traded for the $7.50 fee of Smith and Davis taxed as costs in the Hilderbrand case at less than the par value of such fees. The record is certainly devoid of facts indicating that the defendant either directly or indirectly purchased the fees mentioned either for less than par value or at their face, for that matter. Nor are there facts in the record from which a reasonable inference will go to sustain the verdict returned by the jury in this case. The evidence of both Smith and Davis pointedly denies that they sold the fee mentioned to the defendant at any price. From the evidence of Davis, however, it appears that the de-

fendant paid to them $11.25 November 5th, covering
their fee in this case and for some other publication in
two other cases. The amount due in these two other
cases is not mentioned and from all that appears, it
may have been that of the $11.25 paid to them by the
defendant, $7.50 covered the fee in the Hilderbrand case
and the remaining $3.75 covered the publications in the
other cases. This may or may not be true. The point
is, not a word appears in the proof indicating that the
clerk settled the Hilderbrand fee of $7.50 for less than
its par value. Be that as it may, this proof does not
show that the clerk either bought, purchased or traded
for the Hilderbrand fee at any price. The proof is that
he paid $11.25 to the publishers covering this publica-
tion. There is not a word that he had bought, purchased
or traded for the fees. Indeed, on the showing that
there was a fund of $10 only out of which $42.69 costs
were to be paid, the fact that the clerk only paid $2.50
to the publishers on their $7.50 fee, if such facts ap-
peared (and they do not), would hardly amount to
raising a violent presumption against him on the charge
in the information under those circumstances. Now
while it would have been the proper course, no doubt,
for the sheriff to have collected the money arising from
the sale and to have paid it out pro rata there was cer-
tainly no violation of the statute above quoted by the
mere fact that the money was paid to the clerk instead
of to the sheriff, if such was the case, and that he paid
it out to those entitled thereto. It appears from the
evidence of the sheriff that the money was not paid to
him at all. His accounts were squared in a settlement
with the clerk. He owed the clerk some costs and the
clerk owed him some costs and the matter was mut-
tually balanced off between them in some satisfactory
manner. It may have been that the clerk owed Davis,
the purchaser of the land, and settled with the sheriff,
intending to turn the amount to Davis in their settle-

ment. Nothing appears one way or the other on this question except that the clerk settled with the sheriff. All of this may be true and certainly no offense is committed. It is entirely consistent with the defendant's innocence of the offense charged, especially when there is nothing appearing in the record tending to show that the clerk received title, either directly or indirectly, to the land involved. There is a suggestion in the record by the prosecuting attorney that the defendant in some manner benefited by receiving title to the lands. With this thought in mind, we have searched the record diligently for something which might indicate that he either directly or indirectly purchased or traded for the $7.50 publication fee mentioned for less than par value. There is a dearth of testimony, however, to sustain this suggestion. The circumstance of the clerk paying to Smith and Davis their publication fee, or a part of it at least, in the Hilderbrand case, is somewhat difficult to reconcile with the fact that Davis bought in the land in order to protect their publication fee. It may be, however, that Smith and Davis paid to the clerk the $10 which was bid for the land and that the clerk, on November 5th, paid this fee or their pro rata portion of the fees, to them. It may be that Davis conveyed the land to a third person and the third person paid the $10 purchase price into the clerk's office and the clerk settled with the sheriff and Smith and Davis. These matters are reasonable and in no respect inconsistent with the theory of defendant's innocence of the offense charged. While the evidence discloses Davis conveyed the land to some one, it does not disclose to whom he conveyed it nor what he received for the conveyance nor to whom the price was paid. Be this as it may, however, the evidence is entirely insufficient to sustain the verdict of conviction in this case. No candid mind can review the evidence in the record and give judgment sustaining the verdict on the facts, or reasonable infer-

ences from the facts in proof. The finding of the jury can only be supported by conjecture and suspicion, neither one of which are entitled to the dignity accorded legitimate inferences from facts, which is essential at least to constitute substantial evidence.

The judgment will be reversed and the defendant discharged. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.